**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

IN RE:

Erika Olivia Stevens,

Debtor(s).

C/A No. 26-00505-EG

Chapter 13

**AMENDED ORDER DENYING MOTION TO EXTEND AUTOMATIC STAY AS TO GLENVIEW AUTO LOAN FUND, LLC[1]**

**THIS MATTER** comes before the Court on the Amended Motion to Extend Automatic Stay ("Motion to Extend Stay") filed by Erika Olivia Stevens ("Debtor") on February 24, 2026 pursuant to 11 U.S.C. § 362(c)(3).[2]  On March 6, 2026, Glenview Auto Loan Fund, LLC d/b/a Glenview Finance ("Creditor") filed an objection (the "Objection") to the Motion to Extend Stay.[3] The parties filed a Joint Statement of Dispute on March 16, 2026.[4]  A hearing was held on March 17, 2026, at which the Court heard testimony from Debtor, and the Creditor entered several exhibits into evidence.[5]  For the reasons set forth below, Debtor's Motion to Extend Stay is denied as to Glenview Auto Loan Fund, LLC.

**FACTS**

This is Debtor's second chapter 13 case pending within the last year.  Debtor's prior case (C/A No. 25-03392-eg) was filed on August 28, 2025, and dismissed on January 20, 2026, for failure to make payments resulting in her plan not being confirmed.[6]  The current case was filed less than a month later, on February 3, 2026 ("Petition Date").  Pursuant to 11 U.S.C. § 362(c)(3),

---

[1] This amends the prior order entered on March 25, 2026 to correct a grammatical error in Footnote 35 and the surrounding text.
[2] ECF No. 15.
[3] ECF No. 20.
[4] ECF No. 22.
[5] ECF No. 24,  Exhibits A-G.
[6] C/A No. 25-03392-eg, ECF No. 23.

1

the automatic stay was set to expire on the thirtieth (30th) day after the Petition Date– *i.e.*, March 5, 2026.  On February 17, 2026—fourteen (14) days after the Petition Date—Debtor filed the Motion to Extend Automatic Stay (the "Original Motion to Extend"),[7] self-scheduling the matter for a hearing on March 13, 2026, with an objection deadline of March 3, 2026.  That date, however, was not available pursuant to SC LBR 9013-4 as a self-scheduled day for motions of this kind.[8] On February 24, 2026, Debtor filed the amended Motion to Extend Stay,[9] self-scheduling the matter for the available date of March 17, 2026.  The deadline for parties to object was March 10, 2026.  Debtor also filed an Affidavit[10] explaining that, while her prior case was pending, she "experienced health issues, which led to a loss of income."  By the time her health issues were resolved, she had fallen too far behind on her payments to the trustee resulting in her plan not being confirmed.  Debtor further explained her health has since recovered, and she does not anticipate reductions in her income.

On the same day the Motion to Extend Stay was filed, Debtor filed a Motion to Temporarily Extend Automatic Stay, noting that the hearing on the Motion to Extend Stay was scheduled for March 17, 2026—past "the initial 30-day Automatic Stay that . . .  expires on March 5, 2026."[11] The Court entered a text order granting the Motion to Temporarily Extend Automatic Stay and extended the stay until the hearing on March 17, 2026, to allow the Court to fully consider the merits of the Motion to Extend Stay.[12]  The text order noted that the extension was granted on an

---

[7] ECF No. 12.

[8] SC LBR 9013-4 (Self Scheduled Motions) provides a list of motions that may be self-scheduled by CM/ECF participants by selecting a hearing date from a monthly calendar posted on the Court's website.  The matter must be scheduled in the same division of the case and before the judge assigned to the case, unless otherwise allowed.  The rule further provides, in pertinent part, that a movant "waives any automatic relief in the movant's favor that may be due under the Bankruptcy Code or applicable Rules as a result of the expiration of any time period or deadline that may occur before the self-scheduled hearing can be held."

[9] ECF No. 15.

[10] ECF No. 13.

[11] ECF No. 16, filed Feb. 24, 2026.

[12] ECF No. 18.

"interim basis" and "for good cause shown, and to enable the Court to fully consider the merits of Debtor's Motion to Extend, and without prejudice to objections to the Motion to Extend or to a further order extending the stay or denying an extension of the stay . . . ."

### A. Creditor's Objection to Motion to Extend Stay

Creditor is the holder of a secured claim based upon a Retail Installment Sales Contract ("Contract") executed on or about January 29, 2025, in the amount of $19,944.00, secured by a 2020 Honda Accord, VIN: 1 HGCV1F33LA102334 (the "Vehicle").  The Contract was signed by Debtor and her sister, Alexis Harling, and requires them to maintain insurance on the Vehicle with a collision coverage deductible not to exceed $500.00.[13]  In the Objection, Creditor raises two arguments: (1) The timing of the filing of the Motion to Extend Stay was improper pursuant to 11 U.S.C § 362(c)(3)(B); and (2) Debtor has failed to act in good faith.  Creditor posits that "[p]er the black letter law of 11 U.S.C. § 362(c)(3)(B), the hearing to extend the automatic stay in a second filing within one year, must be noticed and held within the 30-day period of the filing of the second bankruptcy case."  Creditor further argues that Debtor failed to act in good faith because she had failed to provide and maintain adequate insurance in a timely manner and switched the insurance policy from a $500.00 deductible to a $1000.00 deductible on multiple occasions.

### B. Debtor's Prior Bankruptcy Case – Case No. 25-03392-eg

Debtor's prior chapter 13 bankruptcy was filed on August 28, 2025 (the "Prior Case").  During that case, Debtor was represented by the same counsel as in the current case.  According to Debtor's Schedule I,[14] Debtor worked as a Certified Nurse Assistant, and her take home pay was listed as $1,654.38.  No "other income regularly received" was listed on Schedule I.[15]  The

---

[13] Exhibit A.

[14] C/A No. 25-03392-eg, ECF No. 11.

[15] According to the payment advices[15] filed with the Court, Debtor's "regular pay" was $18.00 per hour and on weekdays she received an additional $2.00 per hour, while on weekends she receives an additional $3.00 per hour.

payment advices show Debtor working anywhere between approximately nineteen (19) hours to fifty-eight (58) hours in a given two-week pay period.  On Schedule J, Debtor listed two minors as her dependents and listed expenses totaling $1,392.00, allotting: $400.00 for food; $100.00 for medical and dental expenses; $25.00 for vehicle tax; $80.00 for transportation (including gas and maintenance); $50.00 for entertainment, clubs, recreation, newspapers, magazines, and books; and $180.00 for furniture lease payments.  Her net monthly income was listed as $262.38.

Debtor's Statement of Financial Affairs ("SOFA") indicated she was married, but Schedule I did not list any spousal income, and, on question five (5) on the SOFA, Debtor indicated she did not receive any other income including alimony and child support during the current year or the two previous calendar years.  On September 16, 2025, Debtor filed a chapter 13 plan, proposing to pay $550.00 per month for sixty (60) months.[16]  The plan proposed that Creditor's claim of $19,594.00 be paid in full at an interest rate of 9.00% with monthly payments of $400.00.  Debtor's plan further indicated that she intended to surrender a 2017 Nissan Rogue CUV.  Debtor further proposed to assume her furniture and residential leases which she claimed had no prepetition arrearages.

The confirmation hearing was originally scheduled for November 18, 2025, but was subsequently continued to January 20, 2026, at the Chapter 13 Trustee's request.[17]  The Prior Case was ultimately dismissed on January 20, 2026, because the proposed plan did not comply with the requirements of chapter 13 due to Debtor being behind on payments to the trustee.[18]

---

[16] C/A No. 25-03392-eg, ECF No. 12.
[17] C/A No. 25-03392-eg,  ECF No. 19, filed Nov. 13, 2025.

### C. Debtor's Current Case

Debtor's current case was filed approximately fourteen (14) days after the dismissal of the Prior Case. The § 341 Meeting of Creditors was held on March 23, 2026, and the Confirmation Hearing is scheduled for April 28, 2026. According to Debtor's Schedule I,[19] Debtor's occupation and employer are the same as in the Prior Case and her take home pay is listed as $1,748.89, which is $94.51 more than in the Prior Case. The payment advices[20] filed in the current case show Debtor's hourly pay remaining the same as in the Prior Case and that she works anywhere from twenty-eight (28) to fifty-eight (58) hours per pay period. Debtor again listed two children in her Schedule J and monthly expenses totaling $1,180.00, allotting: $350.00 for food; $25.00 for medical and dental; $0.00 for vehicle tax; $25.00 for entertainment, clubs, recreation, newspapers, magazines, and book; and $143.00 for furniture lease payments. The transportation expenses remained at $80.00. The overall expenses in the current case show a decrease of $212.00 from her previous case, resulting in a net monthly income of $568.89.[21]

The SOFA in Debtor's current case again indicates Debtor is married and that she receives no other income including alimony or child support. The proposed plan payment in the current case is $560.00 per month for a period of sixty (60) months—a $10.00 increase from the previous plan payments.[22] The plan proposes that Creditor's claim, now listed as $19,685.75, be paid in full at an interest rate of 8.25% with monthly payments of $400.00. The remaining terms of the plan were similar or identical to the ones in the proposed plan in the Prior Case.

---

[19] ECF No. 8.
[20] ECF No. 10, filed Feb. 12, 2026.
[21] ECF No. 8.
[22] ECF No. 9.

**D. Hearing on the Motion to Extend Stay**

At the hearing on the Motion to Extend Stay,  Debtor testified that in the Prior Case she had fallen behind on her payments because she has a medical condition which caused her to miss three to four days of work per pay period.[23]  She further testified that the medical issue has been ongoing and has not fully been resolved, but that "it got better."  When questioned by Creditor's Counsel how often she needs to take a step back from work, she stated that her medical condition only prevents her from working when she is not taking her medicine.  She testified that during her previous case she was out of her medication, but she is now taking it again and is "on track."

Debtor further testified that the Vehicle was repossessed before the Petition Date and then returned to her on March 9, 2026.  Regarding Creditor's assertions about her switching the Vehicle's insurance policy, Debtor testified she originally had the correct deductible on her insurance policy as required by the Contract, but when Debtor's Counsel requested the binder agreement, Debtor thought the deductible was supposed to be $1,000.00, so she had it changed to the higher amount to "make the process move faster."  When Debtor's Counsel informed Debtor that the deductible was supposed to be $500.00, she claimed she promptly changed the policy back to reflect a $500.00 deductible.  Debtor stated she never changed it back to $1,000.00.

Debtor testified that her bi-weekly pay after taxes is $1,100.00 and that she lives with her parents and pays $300.00 on rent.  She is separated from her husband.  Though she testified she receives child support from her husband, though not pursuant to a court order, Debtor's Schedule I or SOFA do not list any alimony or child support.[24]  Debtor testified she is now able to work and can work overtime and thus will be able to maintain the insurance policy and bankruptcy case moving forward.

---

[23] Debtor does not have paid time off.

[24] As in the Prior Case, Schedule I does not reflect any income from her estranged husband.

6

In support of Creditor's argument that Debtor has not acted in good faith, Creditor presented Exhibits A-G, which were all admitted into evidence with no objection. Creditor's Counsel proffered the sequence of events, which was not disputed. Creditor's Counsel explained the Vehicle was repossessed before the Current Case was filed. In order to return the Vehicle to Debtor, Debtor was required to show how Creditor would be treated in the plan and provide proof of insurance with a maximum deductible of $500.00. On February 17, 2026, Debtor's Counsel provided Creditor with proof of insurance; however, the insurance policy showed a deductible of $1,000.00.[25] Creditor's Counsel notified Debtor's Counsel that the policy needed to have a maximum deductible of $500.00 and that the policy would need to be corrected. On February 23, 2026, Debtor's Counsel provided proof of insurance with a $500.00 deductible.[26] The same day, Creditor along with Creditor's Counsel used a State Farm tool, which Creditor's Counsel asserted provides information on insurance policies in real time, to confirm the amount of deductible for Debtor's policy, but found that the policy had been switched to a deductible of $1,000.00.[27] Creditor's Counsel again contacted Debtor's Counsel regarding the insufficient deductible. On February 24, 2026, Debtor's Counsel provided a binder document showing a policy with a $500.00 deductible.[28] Creditor and Creditor's Counsel tried to confirm the policy again on February 25, 2026, and it again showed a $1,000.00 deductible.[29] On March 3, 2026, Debtor's Counsel provided a declaration page containing a $1,000.00 deductible.[30] That same day, Creditor's Counsel again asked for proof of a policy with a $500.00 deductible, which was ultimately provided and

---

[25] Exhibit B.
[26] Exhibit C.
[27] Exhibit D.
[28] Exhibit E.
[29] Exhibit F.
[30] It was this Declaration page that Creditor's Counsel believed Debtor had referenced in her testimony as having been mistaken on the deductible and provided to Creditor.

confirmed.[31]  Creditor's Counsel also stated that Debtor has had the Vehicle less than a year and

has only made three or four payments on it and it has already been repossessed.

Creditor's Counsel further argued that the Motion to Extend Stay was untimely as the

Petition was filed on February 3, 2026, and Debtor waited two weeks to file the Original Motion

to Extend Stay, scheduling the hearing for a date after the automatic stay would have terminated

on its own terms by virtue of 11 U.S.C. § 362(c)(3)(A).  Had the Motion to Extend been filed on

the Petition Date, Creditor's Counsel argued the hearing could have taken place within the thirty

(30) days after the Petition Date.  Debtor's Counsel indicated that their office typically tries to

speak with a creditor before filing a motion to extend the automatic stay but did not provide a

reason for the delay in filing the Motion to Extend Stay.

## CONCLUSIONS OF LAW

The parties filed a joint statement of dispute which narrowed the issues to the following:

(1) Was Debtor's failure to maintain adequate insurance on the Vehicle, before receiving the

Vehicle back, sufficient to determine that the filing was in bad faith; and (2) Is a properly filed

Motion to the Extend the Stay which provides a hearing date more than thirty (30) days after the

petition date filed untimely, even with a temporary extension.[32]

Examining each of these issues, in turn, the Court notes that 11 U.S.C. § 362(c)(3) governs

this analysis.[33]  Pursuant to 11 U.S.C. § 362(c)(3), the automatic stay terminates on the thirtieth

---

[31] The Court notes that Exhibits B-G do not show a date or time the documents were generated.  Debtor's Counsel did not object to the admission of the Exhibits, but he did note that Exhibits D and F showed no dates and are functionally the same.  Upon the Court's inquiry regarding the sequence of events as described by Creditor's Counsel, Debtor's Counsel did not provide any other explanations or dispute that the insurance deductibles were changed from $500.00 to $1,000.00.

[32] ECF No. 22.

[33] 11 U.S.C. § 362(c)(3) provides that
 (c) Except as provided in subsections (d), (e), (f), and (h) of this section—
  (3) if a single or joint case is filed by or against a debtor who is an individual in a case under
  chapter 7, 11, or 13, and if a single or joint case of the debtor was pending within the preceding

(30th) day after the filing of a petition if the debtor had a chapter 7, 11, or 13 case "pending within the preceding 1-year period but was dismissed." 11 U.S.C. § 362(c)(3)(A). The automatic stay may be extended beyond thirty (30) days

> on the motion of a party in interest for continuation of the automatic stay and upon notice and a hearing, the court may extend the stay in particular cases *as to any or all creditors (subject to such conditions or limitations as the court may then impose)* after notice and a hearing completed before the expiration of the 30–day period only if the party in interest demonstrates that the filing of the later case is in good faith as to the creditors to be stayed.

11 U.S.C. § 362(c)(3)(B) (emphasis added).

Pursuant to 11 U.S.C. § 362(c)(3)(C) a presumption that the case was not filed in good faith arises when, among other reasons, "there has not been a substantial change in the financial or personal affairs of the debtor since the dismissal of the next most previous case under chapter 7, 11, or 13 or any other reason to conclude that the later [chapter 13] case will be concluded . . . with a confirmed plan that will be fully performed." 11 U.S.C § 362(c)(3)(C)(i)(III). Such presumption, "may be rebutted by clear and convincing evidence." 11 U.S.C § 362(c)(3)(C). Clear and convincing evidence is a heightened standard and a "somewhat stringent standard, requiring a showing of proof 'beyond preponderance,' but below 'beyond reasonable doubt.'" *In re Moss*, 633 B.R. 711, 713 (Bankr. D.S.C. 2021) (citations omitted). "In order to prevail[,] the movant, given the heightened standard of proof, must do more than merely tip the scales in his favor. Indeed, for the presumption and standard of proof to have meaning the movant must produce sufficient

---

1-year period but was dismissed, other than a case refiled under a chapter other than chapter 7 after dismissal under section 707(b)—
   (A) the stay under subsection (a) with respect to any action taken with respect to a debt or property securing such debt or with respect to any lease shall terminate with respect to the debtor on the 30th day after the filing of the later case . . .

9

evidence to tilt the balance decidedly in his favor." *In re Thomas*, 352 B.R. 751, 754 (Bankr. D.S.C. 2006). If the presumption is not raised, Debtor must prove the case was filed in good faith by the preponderance of the evidence. *In re Pence*, 469 B.R. 643, 646 (Bankr. W.D. Va. 2012) (citing *In re Thomas,* 352 B.R. at 754).

Good faith is not defined within § 362(c)(3). While the Fourth Circuit has not directly addressed the standard to apply for determining "lack of good faith," many courts have applied the "totality of circumstances test," by conducting a fact-intensive analysis on a case-by-case basis. *In re McKenzie*, No. 26-00044-EG, 2026 WL 561373, at *3 (Bankr. D.S.C. Feb. 23, 2026)(citations omitted). This Court has applied various factors when making the determination of whether a debtor filed a case in good faith. Some of the factors considered include: "1) Debtor's past bankruptcy filings, which includes a determination of whether Debtor experienced a change in circumstances warranting another filing; 2) the period of time that elapsed between Debtor's filings; 3) Debtor's pre-petition behavior; and 4) the effect of Debtor's repeated filings on creditors." *In re Moss*, 633 B.R. at 713 (citing *In re Thomas*, 352 B.R. at 756).[34] "This Court has previously noted that a court should consider evidence demonstrating a substantial change in circumstance; however, a change in circumstances alone is rarely sufficient to establish good faith on the part of the debtor." *In re McKenzie*, 2026 WL 561373, at *3 (citing *In re Moss*, 633 B.R. at 713).

---

[34] *See also In re Chanto*, No. 25-00403-jd, 2025 WL 875254, at *4 (Bankr. D.S.C. Mar. 20, 2025), which considered the following factors for purposes of analyzing whether the extension of the automatic stay was warranted:

> the percentage of proposed repayment, the debtor's financial situation, the period of time payment will be made, the employment history and prospects of a debtor, the nature and amount of unsecured claims, a debtor's past bankruptcy filings, the debtor's honesty in representing facts, any unusual or exceptional problems, the debtor's pre-filing conduct and the possibility of non-dischargeability in a chapter 7 proceeding ...

*Id.* (quoting *In re Pizzo*, 628 B.R. 811, 818 (Bankr. D.S.C. 2021).

10

**A. This Case Was Presumptively Filed Not in Good Faith**

Debtor has had one case pending and dismissed within one year prior to the Petition Date; thus, § 362(c)(3) applies.  Debtor's financial or personal affairs have not changed substantially since the dismissal of her prior case raising the presumption that the case was not filed in good faith under § 362(c)(3)(C)(i)(III).  At the hearing on March 17, 2026, Debtor testified that the only change between her prior filing and the current case was that in the Prior Case she had a medical issue which led to her missing payments to the trustee and her plan not being able to be confirmed.  She testified that her medical issue remains, but that she is now able to manage it and no longer has to miss work.  Although Debtor's schedules indicate a slight increase in her income of $94.51 and a decrease in expenses of $212.00, Debtor's job, employer, and hourly pay have remained the same.  Because Debtor's medical condition is ongoing and requires medication to manage and given the slight increase in income and the decrease in expenses, the Court further concludes that there has not been a substantial change in Debtor's financial or personal affairs since her previous case and the presumption that the case was filed not in good faith arises.

**B. Presumption That Case Was Filed Not in Good Faith Has Not Been Rebutted**

The Court finds that Debtor has failed to rebut the presumption that the case was filed in good faith with clear and convincing evidence. Debtor's prior bankruptcy case and the fact that only fourteen (14) days passed between the dismissal of her first case and the filing of her second case weigh against Debtor.  Debtor testified that the medical condition that led to the dismissal of the Prior Case has since been brought under control for work purposes, although the underlying condition remains ongoing and requires continued medication for management.  While the Court is sympathetic to Debtor's situation and is sensitive to her ongoing medical issues, the Court does not find Debtor's testimony persuasive.

11

Though Debtor's employment has remained the same in both cases, she provided no explanation or plausible reason for the increase in hours that would lead to increase in income. Additionally, she testified that her bi-weekly take home pay is $1,100.00 which equals approximately $2,300.00 a month—a different amount than what was listed in Schedule I in both her cases.  Moreover, Debtor's Schedule J in her current case reflects a decrease in expenses of $212.00.  While efforts at financial restraint are understandable and commendable for a debtor, such assertions lack credibility where the evidence reflects little, if any, discretionary spending to curtail.  A closer look at the expenses reveals that Debtor decreased her medical expenses to $25.00 in the current case—from $100.00 in the Prior Case—and her food expenses to $350.00—from $400.00.   Given Debtor's testimony regarding a chronic medical condition necessitating medication, the Court finds the claimed $25.00 monthly medical expenses to be unrealistic and of limited credibility, especially for a family of three.  Additionally, the national standards as set by the Internal Revenue Service ("IRS") for food, clothing, and other items sets $1,068.00 as the monthly budget for food for a family of three.[35]  The reduction in food expense in Schedule J— from an amount already well below the national standard to an even lower figure—resulting in overall decreased monthly expenses and higher monthly net income, does not demonstrate a bona fide change in circumstances, but rather an unsustainable allocation.

The Court finds that the expenses listed on Schedule J undermine the feasibility of the proposed plan and cast doubt on Debtor's ability to make the proposed plan payments.  While feasibility of the plan is an issue more pertinent for a plan confirmation hearing, it is also appropriate to consider at this time.[36]  Here, a closer examination of Debtor's schedules supports

---

[35] *National standards: Food, clothing and other items*, IRS, https://www.irs.gov/businesses/small-businesses-self-employed/national-standards-food-clothing-and-other-items (last visited Mar. 20, 2026).
[36] *In re Chaney*, 362 B.R. 690, 695 (Bankr. E.D. Va. 2007) ("Indeed, in adopting § 362(c)(3)(C) of the Bankruptcy Code, Congress signaled its preference for the early disposition of cases that lack substantive merit."); *see also In re*

12

a finding that her circumstances have not changed as suggested by her total income and expenses, which casts doubt upon the feasibility of the plan.  This is particularly significant because the reason for the dismissal of the Prior Case was due to the failure to confirm a plan and make the required plan payments.  The Court is not persuaded given Debtor's testimony and the current expenses that the plan will be fully performed or that Debtor's financial circumstances have substantially changed since the dismissal of the Prior Case.

As to the impact of her repeat filings on Creditor, notably, Debtor has only made a few payments to Creditor since the Contract was signed in January 2025.  Moreover, as set forth in more detail above, neither Debtor nor Debtor's Counsel refuted that Creditor had asked Debtor for proof of an insurance policy with a deductible of $500.00 on February 17, 2026 and it took approximately two (2) weeks for Debtor to provide sufficient proof.[37]  Debtor's testimony also reveals she in fact did not maintain the required insurance for at least some period of time.  Debtor's repeat filings have had a negative effect on Creditor, which has incurred costs related to holding a vehicle, turning it over, and counsel fees.

Debtor's testimony also brought to light some inconsistencies on her schedules, including the omission of the income she receives from her husband each month.  When considering the totality of the circumstances, and after being able to observe Debtor's testimony and weighing all the evidence presented, the Court, while sympathetic to Debtor's situation, concludes that Debtor

---

*Jupiter*, No. 06-00963-JW, 2006 Bankr. LEXIS 2378, at *3 (Bankr. D.S.C. Mar. 31, 2006) (explaining that the court may deny a motion to extend the automatic stay based upon a lack of plan feasibility); *In re West*, No. 23-20618-CMB, 2023 WL 4387030, at *3 (Bankr. W.D. Pa. July 6, 2023) (noting the court must be satisfied that the plan in the new case will succeed when determining if the case was filed in good faith);  *In re Hardy*, No. 22-11277-WJ, 2022 WL 1196963, at *7 (Bankr. C.D. Cal. Apr. 21, 2022) (stating that feasibility is a central issue in considering a motion to extend the automatic stay under § 362(c)(3)).

[37] Furthermore, Debtor testified that she believed that the Contract required an insurance policy with a maximum deductible of $1000.00.  Though Debtor stated she was mistaken, it calls into question that even if the maximum deductible was set at $1000.000, why Debtor would need to change a policy from $500.00 deductible to a $1000.00 because surely a $500.00 deductible would have complied with the requirement of having a maximum deductible of $1000.00.

has not rebutted the presumption that the case was not filed in good faith by clear and convincing evidence. Even if the presumption did not arise, the Court finds that Debtor did not meet the lower burden of preponderance of the evidence.

Due to the language of § 362(c)(3), and the fact that only Creditor objected to the relief sought, the Court only denies the extension of the stay as it applies to Creditor.

### C. Timing of the Motion

Creditor argues the Motion was untimely. Filed weeks after the Petition Date, the Creditor argues it foreclosed Debtor's ability to schedule a hearing within thirty (30) days, thereby precluding any extension. Due to Debtor not meeting her burden to prove that the case was filed in good faith, the Court need not decide the issue of whether the Motion to Extend Stay was timely filed. However, as the Court has previously made clear, motions to extend the automatic stay should, under most circumstances, be filed contemporaneously with the petition or immediately thereafter, and that delay in doing so risks denial of such relief.

This Court has made several announcements in recent years instructing debtors and counsel to avoid delays in filing Motions to Extend Stay. In March 2024, the Court reminded the bar that "[w]hile compliance with the 7-day requirement under SC LBR 9013-1 may sometimes be difficult depending on available self-scheduled hearing dates, it can be easily attained and unnecessary hearings avoided if the Motion is filed with the petition."[38] In July of 2025, the Court also stated in an announcement:

> Motions to extend or impose the stay should be filed with the petition and scheduled for hearing within the first thirty days of the case. If you are unable to timely schedule a hearing on a motion to extend the stay, a temporary extension of the stay should be requested by a separate motion. The burden is on the party seeking an

---

[38] *Practice Reminders*, United States Bankruptcy Court District of South Carolina (Mar. 26, 2024) https://www.scb.uscourts.gov/news/practice-reminders.

extension of the stay to request any necessary temporary extension. Consult 11 U.S.C. § 362(c)(3) and (4).[39]

Subsequently, in September of 2025, the Court announced the creation of a new CM/ECF event for requests to temporarily extend the automatic stay.  In its announcement the Court stated, "[t]he 'Extend Automatic Stay – Temporarily' event may be used to file a Motion to Temporarily Extend the Automatic Stay **if a hearing on a pending Motion to Extend the Stay cannot be held within 30 days of the petition date**."[40]  Though the Court has implemented a CM/ECF event to facilitate requests for temporary extensions of the automatic stay, its purpose is administrative efficiency only and it was not intended to modify, circumvent, or override the statutory requirements of § 362(c)(3).  The event should generally be used when a debtor makes a good faith effort to timely file a motion to extend the automatic stay, but the dates available for the self-scheduled hearing pursuant to SC LBR 9013-4 do not allow a hearing to be held within the thirty (30) days prescribed by the Bankruptcy Code.  Even when the Court grants such temporary extension, it usually remains subject to any objections to be raised at the hearing.  Such event also does not foreclose Debtor's ability to seek an emergency hearing if warranted pursuant to SC LBR 9075-1.

Under the facts of this case, the Court cannot conceive a reason why Debtor would wait two weeks to file the Original Motion to Extend and then wait an additional week to file the amended version to correct the hearing date, given the time sensitive nature of such request.  In cases where a debtor, whose prior case was recently dismissed, waits an unreasonable amount of

---

[39] *The Scoop*, United States Bankruptcy Court District of South Carolina (July 29, 2025) https://www.scb.uscourts.gov/news/select-court-observations-practice-scoop-july-2025.

[40] *New CM/ECF Event for Motion to Temporarily Extend the Automatic Stay*, United States Bankruptcy Court District of South Carolina (Sept. 5, 2025) https://www.scb.uscourts.gov/news/new-cmecf-event-motion-temporarily-extend-automatic-stay.

time to seek the extension of the automatic stay, such delay may raise an inference that the debtor

is attempting to unilaterally extend the interim period for the automatic stay beyond that permitted

by statute.

## CONCLUSION

For the reasons stated above, Debtor's Motion to Extend Stay is DENIED as to Creditor.

**AND IT IS SO ORDERED.**

**FILED BY THE COURT**
**06/09/2026**



Entered: 06/09/2026

Elisabetta G. M. Gasparini
US Bankruptcy Judge
District of South Carolina